UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ERICKSON'S FLOORING & SUPPLY,**
**CO., INC., a Michigan corporation,**

     **Plaintiff(s),**    CASE NUMBER: 03-74214
                HONORABLE VICTORIA A. ROBERTS

**v.**

**TEMBEC, INC., a foreign corporation,**
**TEMBEC, USA, LLC, an Illinois limited**
**liability company, ALL TILE, INC., an**
**Illinois company, and KEVIN GURICAN,**
**jointly and severally,**

     **Defendant(s).**
_____/

ORDER

**I. INTRODUCTION**

This matter is before the Court on Defendants Tembec, Inc. and Tembec USA, LLC's Motion for Summary Judgment and Defendant Kevin Gurican's Motion for Summary Judgment. The Court **GRANTS** both motions.

**II. BACKGROUND**

This case arises from the alleged breach of a distributorship agreement. Plaintiff Erickson's Flooring & Supply Co., Inc. ("Erickson's") is a wholesale distributor of hardwood flooring and related supplies. Erickson's brings this action against its supplier, Defendant Tembec Industries, Inc., a foreign manufacturer of hardwood flooring. Erickson's also sued Defendant Tembec USA, LLC, which asserts that it is merely a holding company set up in the United States to allow Tembec Industries Inc. to pay its United States employees, and Defendant Kevin Gurican, who worked for

Tembec as a sales representative.[1] For ease of reference both Tembec companies will be collectively referred to as "Tembec."

In 1992, via an oral agreement, Erickson's became a Tembec distributor in the midwest region of the United States. By 2000, Erickson was distributing Tembec products in Ohio, Michigan, Illinois and Indiana. In 2003, however, one of Erickson's competitors, All Tile, Inc. ("All Tile"), approached Tembec about becoming one of its distributors. In late August 2003, All Tile and Tembec reached an agreement that Tembec would restructure its distribution network to include All Tile. On August 29, 2003, Erickson's says that it received telephone calls from customers saying that All Tile informed them that it was Tembec's new distributor. Erickson's then called a meeting with Tembec on September 3, 2003. At that meeting, Tembec effectively terminated its existing distribution agreement with Erickson's. Effective October 24, 2003, Tembec advised Erickson's that it could continue as a distributor in Ohio and Indiana, but would have to enter into a dual distribution arrangement with All Tile in Michigan and cease distribution entirely in Illinois.

Erickson's contends that Tembec breached their distribution agreement, because Tembec promised that Erickson's would be the exclusive distributor of Tembec products in Michigan, Ohio, Indiana and Illinois. Erickson's also alleges that, sometime after it was advised of the changes in Tembec's distribution network, Defendant Gurican contacted one of Erickson's biggest customers and falsely claimed that Erickson's was going out of business and was not able to service its customers. And, after Gurican left Tembec in February 2005 to work for All Tile, Erickson's says that he used information

---

[1] A fourth Defendant, All Tile, Inc. ("All Tile"), was dismissed by stipulation on October 26, 2005.

that he obtained while working for Tembec to solicit its (Erickson's) customers for his and All Tile's benefit.

Plaintiff asserts multiple claims. Against Defendant Gurican only, Plaintiff alleges business libel and slander (Count I).[2] Against Gurican and Tembec, Plaintiff alleges unfair competition (Count IV), unjust enrichment (Count V), and tortious interference with contractual relationships and/or advantageous business expectancies (Count X). And, against Tembec alone, Plaintiff alleges detrimental reliance (Count II), breach of contract (III), fraudulent and negligent misrepresentation (Counts VI and VII), silent fraud (Count VIII), and breach of implied covenant of good faith and fair dealing (Count IX). Defendants move for summary judgment on all claims.

## III.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and

---

[2]Count I actually is alleged broadly against all Defendants. However, all of the parties seem to proceed on the presumption that it is only brought against Defendant Gurican.

it must also draw all reasonable inferences in the nonmoving party's favor.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact.  *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995).  To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c).  *Cox*, 53 F.3d at 149.  Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).  The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact.  Rule 56(e); *Cox*, 53 F.3d at 150.  The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint.  *Copeland*, 57 F.3d at 479.  The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party.  *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

IV.   APPLICABLE LAW AND ANALYSIS

    A.   CLAIMS AGAINST DEFENDANT TEMBEC

        i.   **Breach of Contract and Detrimental Reliance**

Defendant Tembec asserts that it did not have a valid contract with Plaintiff. Alternatively, if there was a contract, Defendant contends that it was terminable at will. Plaintiff disputes both assertions, essentially arguing that their contract was terminable only for cause, and that there is a question of fact regarding whether there was good cause in this case. The Court finds that there is *prima facie* evidence that Plaintiff and Defendant had a valid, enforceable, terminable at will, oral distributorship contract, which gave Plaintiff exclusive distributor rights in four states.

### a. There was a Valid, Enforceable Contract

"The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Mallory v City of Detroit,* 181 Mich. App. 121, 127 (1989). Defendant concedes the first three elements, but disputes the remaining two. Defendant contends that there was no mutuality of agreement between it and Plaintiff because Defendant never agreed to be bound to an exclusive distributorship relationship with Plaintiff "in perpetuity." Defendant further argues that there was no mutuality of obligation because Plaintiff's alleged distribution of products for two of Defendant's competitors shows that Plaintiff was not bound by an exclusivity agreement. There is no merit to either assertion.

Mutuality of agreement is commonly referred to as a "meeting of the minds." *Kamalnath v Mercy Memorial Hospital Corp.*, 194 Mich. App. 543, 548-549 (1992). A meeting of the minds on all material terms is required in order to form a valid agreement. *Id.* Whether there has been a meeting of the minds "is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id* at 548; *Marlo Beauty Supply, Inc. v. Farmers Ins.*

*Group of Companies,* 227 Mich. App. 309, 317 (1998).  Defendant concedes, and there is ample evidence in the record, that Defendant and Plaintiff had a mutual agreement that Defendant would supply product which Plaintiff would distribute in four states, to their mutual financial benefit.

There is also evidence that the parties' agreement gave Plaintiff exclusive distribution rights in its designated territories.  In a letter dated May 19, 2000, Tembec Sales and Marketing Manager John C. Stewart acknowledges in a paragraph entitled "Exclusivity," that it breached its agreement with Plaintiff by shipping product to a competitor, A-American, in a manner that negatively affected Plaintiff's profit margins in Chicago.  *See* Pl. Exh. 9 at p.2.  In the same letter, Stewart acknowledges that another distributor, Hoboken Floors, was not allowed to sell Tembec flooring to competitor Home Depot in Plaintiff's markets.  *Id* at p. 3.  Stewart promised to confirm that such sales would cease.   Similarly, in a letter to Plaintiff dated August 5, 2001, another of Defendant's representatives, Mark Stecky, indicates that Defendant was not aware that Hoboken Floors was distributing product in Plaintiff's Traverse City market (again to Home Depot), and that it would take steps to remedy the problem.  *See* Pl. Exh. 10 at p.2.  These letters are sufficient to raise a question of fact regarding whether the parties agreed Plaintiff would be the exclusive distributor in certain markets.  Therefore, the Court finds that Plaintiff presented sufficient evidence that all of the material terms of the distributorship contract were agreed upon and, in fact, executed for a number of years.

Defendant cannot claim that there was no mutuality of agreement simply because the parties did not reach any agreement regarding the duration of the contract.  Michigan courts do not regard the duration of a contract as an essential term on which

there must be agreement in order for a contract to be valid. *Lichnovsky v Ziebart International Corp.,* 414 Mich. 228, 240 (1982)("It is not the law that an agreement must have a definite term or duration. . . ."). Contracts that do not have a specific provision regarding duration are simply deemed to be for an "indefinite term." *Id* at 236.

Contrary to Defendant's claim, there was also mutuality of obligation. "[M]utuality of obligation means that both parties to an agreement are bound or neither is bound." *Domas v. Rossi*, 52 Mich. App. 311, 315 (1974). If there is consideration, there is mutuality of obligation. *Hall v Small,* 267 Mich. App. 330, 333 (2005), *app den.*, 474 Mich. 972 (2005). *See also* Restatement 2d of Contract, §79 ("If the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'"). As stated, Defendant concedes that there was consideration. Therefore, the mutuality of obligation element is satisfied.

Because the parties' oral distributorship agreement had each of the essential elements required by Michigan courts, it was a valid, enforceable contract.

### b. The Contract was Terminable At Will and it was not Breached

Contracts which are for an indefinite term and which do not have a provision regarding the manner in which the contract may be canceled are terminable at the will of either party:

> The rule is . . . that where the parties have not agreed upon the term, duration, or manner of termination of such an agreement it is generally deemed to be terminable at the will of either party because they have not agreed otherwise. The intent of the parties is determinative. An agreement which the parties have agreed is terminable only for cause, and which is thus by their agreement to endure until so terminated, is legally enforceable until terminated on that ground.

*Id* at 240-241 (footnotes omitted). Plaintiff offers no evidence that the parties ever agreed that termination would only be for cause. In fact, there is no evidence that the parties ever reached any agreement on the manner in which the contract could be terminated. Therefore, under Michigan law, and as a matter of law, the contract was terminable at will.

Because the contract was terminable at will, Defendant's termination of the contract under the circumstances alleged did not constitute breach of contract. Plaintiff's apparent claim is that Defendant breached the contract by ending their agreement without cause or notice and by allowing a competitor to take over some of Plaintiff's territories. However, absent any agreement otherwise, Defendant was entitled to cancel the contract for cause or for no reason at all. And, there is no evidence that the parties had an agreement regarding the amount of notice required prior to termination of the contract. Therefore, Plaintiff failed to raise a question of fact regarding its breach of contract claim and Count III is dismissed.

### c. There was no Detrimental Reliance

As Defendant asserts, it does not appear that Michigan recognizes an independent cause of action for detrimental reliance. Plaintiff cites *H.J. Tucker & Assoc., Inc. v Allied Chucker and Engineering Co.,* 234 Mich. App. 550 (1999), for the proposition that Michigan does recognize such a claim. However, the *H.J. Tucker* Court actually declined to decide the question. The trial court rejected defendant's argument that detrimental reliance is merely an element of a misrepresentation claim. Defendant appealed. But, on appeal the *H.J. Tucker* Court declined to reverse the trial court on this issue. It found that, even if defendant was correct, the trial court's error was

harmless because the trial court did not award damages on that claim. 234 Mich. App. at 572 n. 9. Therefore, contrary to Plaintiff's assertion, the *H.J. Tucker* Court did not indicate whether Michigan courts would be inclined to recognize independent claims of detrimental reliance.[3]

Even if Michigan courts recognize a claim for detrimental reliance under the standard Plaintiff asserts, Plaintiff failed to raise a question of fact. Quoting *Catallane*, Plaintiff contends that "[d]etrimental reliance results when a person is injured as a result of having done something, or having refrained from doing something, on the basis of material representations of another." 1995 W.L. 871012 at *2 n.5. Here, Plaintiff seems to claim that it relied to its detriment on Defendant Tembec's alleged promise that Tembec would maintain the exclusivity agreement into perpetuity:

> The evidence in the record demonstrates that Erickson's made a variety of business decisions during its eleven-year history with Tembec, based primarily on the Tembec defendants' material representations that Erickson's was and would remain the exclusive distributor of Tembec products in its territories. . . . Erickson's now has been injured by having relied on the Tembec defendants' to its detriment.

Pl. Response at p. 24. There is no evidence that such a promise was ever made. The contract was terminable at will and was cancelled accordingly. Therefore, Plaintiff's detrimental reliance claim in Count II necessarily fails.

### ii.     Fraudulent and Negligent Misrepresentation

"Both negligent and fraudulent misrepresentation require a plaintiff to prove a misrepresentation of fact." *Boumelhem v Bic Corp.*, 211 Mich. App. 175, 184 (1995).

---

[3] Plaintiff's reliance upon *Catallane v Federal Express Corp.*, 1995 W.L. 871012, *2 (E.D. Mich. 1995), is also misplaced because the *Catallane* Court explicitly stated that detrimental reliance was only an element of the plaintiff's equitable estoppel claim.

To establish negligent misrepresentation a plaintiff must prove "'that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.'" *The Mable Cleary Trust v The Edward Marlah Muzyl Trust*, 262 Mich. App. 485, 502 (2004)(*quoting Law Offices of Lawrence J. Stockler, PC v Rose,* 174 Mich. App. 14, 30 (1989)). Fraudulent misrepresentation requires that a plaintiff prove:

> (1) The defendant made a material representation. (2) The representation was false. (3) When the defendant made the representation, it knew that it was false, or the defendant made it recklessly, without knowledge of its truth, and as a positive assertion. (4) The defendant made the representation with the intention that it should be acted on by the plaintiff. (5) The plaintiff acted in reliance on the representation. (6) The plaintiff suffered injury due to his reliance on the representation.

*Id* at 500.

Here, Plaintiff failed to present any evidence that Defendant Tembec ever made a misrepresentation of fact. Based upon Defendant's multiple statements in the 2000 and 2001 letters that it was committed to continuing and improving their business relationship, Plaintiff contends that Defendant falsely led Plaintiff to believe that "they were to continue their business relationship well into the future." Pl. Response at p. 21. For instance, in the May 19, 2000 letter, Mr. Stewart closed by saying, "We look forward to continued growth and mutual success with [Erickson's]." Pl. Exh. 9 at p. 3. In the August 5, 2001 letter, Mr. Stecky said, "I would like to emphasize our commitment and exclusivity to Erickson's over the years and would like to see the same commitment from you and your company regarding this product line." Pl. Exh. 10 at p. 1.

Plaintiff contends that these representations were made to encourage Plaintiff to act or refrain from acting in certain ways relative to its own business decisions, but that

they proved to be false (presumably when Defendant cancelled the contract). There is no evidence, however, that Defendant's assertions regarding its commitment to Plaintiff were false when they were made in 2000 and 2001. Neither of the letters explicitly or implicitly commit to continuing the parties' contract for a specific amount of time. And, Defendant continued to honor the contract for over two years afterwards. Plaintiff failed to meet its burden on this claim. Defendant Tembec's motion for summary judgment on Counts VI and VII is granted.

### iii.  Silent Fraud

In order to prove silent fraud a plaintiff must show that the defendant suppressed or failed to disclose a material fact that the defendant was under a duty to disclose. *M&D, Inc. v W.B. McConkey,* 231 Mich. App. 22, 29 (1998). Presumably, Plaintiff is claiming that Defendant had a duty to disclose its negotiations with All Tile and/or its plan to terminate the exclusivity contract. Plaintiff contends that evidence of this alleged duty is found in the May 19, 2000 letter, in which Defendant acknowledged that its shipment of product to Plaintiff's competitor in the Chicago market, A-American, was a breach of their agreement. *See* Pl Exh. 9 at p. 2. Defendant further stated that the agreement would not be breached in the future, and that Defendant would "notify Erickson [sic] in advance of any exceptions." *Id*. There is no support for Plaintiff's broad interpretation of this statement. Defendant only promises not to ship product to A-American in the future unless it notifies Plaintiff otherwise. Defendant does not promise to give Plaintiff advance notice of any negotiations with other distributors or of its plans to cancel the contract entirely, and Plaintiff has not presented any evidence that its contract with Defendant precluded such negotiations or required Defendant to

give notice of those negotiations or its plan to cancel the contract. The May 19, 2000 letter only shows that Defendant was precluded from allowing other distributors to sell products in Plaintiff's designated areas while their contract was in effect, and Plaintiff does not offer any proof that Defendant violated this provision in its dealings with All Tile. Defendant's motion on Count VIII is granted.

### iv. Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant contends that, "Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing." *Ulrich v Federal Land Bank of St. Paul*, 192 Mich. App. 194, 197 (1991). The Court agrees. Defendant's motion on Count IX is granted.

### B. CLAIM AGAINST DEFENDANT GURICAN

Plaintiff alleges in Count I that Defendant Gurican defamed it by telling Plaintiff's customers that Plaintiff was going out of business and that Plaintiff could not continue servicing its customers. This claim fails. Plaintiff failed to come forward with cognizable evidence in support. The only evidence Plaintiff presents is inadmissible hearsay. Specifically, Erickson's President, Richard Walters, states in his affidavit that employees reported to him that Defendant Gurican contacted personnel at Plaintiff's largest Chicago customer, Coleman Floors, and advised that Plaintiff was going out of business and would not be able to service its customers. *See* Walters Aff. at Pl. Exh. 2, ¶16. Plaintiff does not identify or provide statements from the Erickson's or Coleman Floors employees to which Walters makes reference, and he does not claim to have direct knowledge of this alleged contact by Gurican. Therefore, Walters' averment is hearsay once or twice removed. An affidavit based solely on hearsay is insufficient to create a

genuine issue of material fact.  *See Dole v Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968 (6th Cir. 1991); *Jacklyn v Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).  Consequently, Defendant Gurican's motion for summary judgment on Count I is granted.

### C.     CLAIMS AGAINST BOTH TEMBEC AND GURICAN

(With regard to Counts IV, V and X, which the Court discusses below, Gurican did not move for summary judgment on them in his initial brief.  He only argued for summary judgment on theses claims in his reply, and Plaintiff did not file a surreply.  Apparently, Gurican was under the impression that only Count I was alleged against him, because it is the only count in which allegations are made against him specifically.  Counts IV, V and X, however, are alleged generally against all Defendants.  So, arguably, Gurican should have assumed that they were alleged against him as well.  On the other hand, the basis of those claims as asserted by Plaintiff in its Response to Tembec's Motion, is not alleged in the complaint; that is, Plaintiff does not allege in the complaint that Gurican stole its clients.  That assertion is only made in Plaintiff's Response brief to Tembec's Motion, in which Plaintiff sets forth the allegations against Gurican as well.  Because it is apparent that Plaintiff's claims are baseless, the Court grants Gurican's motion even though it is untimely and procedurally deficient.)

### i.    Tortious Interference with Contractual Relationships and/or Advantageous Business Expectancies

Plaintiff claims that Tembec and Gurican interfered with its contracts and business relationships with customers.  Both Plaintiff and Defendants erroneously apply one test for each claim.  In fact, however, Michigan considers a claim of  tortious interference with contractual relations to be distinct from tortious interference with

business expectancies and applies a different test for each cause of action.  *See Health Call of Detroit v Atrium Home & Health Care Services, Inc.,* 268 Mich. App. 83, ___[4] (2005).

> The elements of tortious interference with a contract are:
>
> > (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant.

*Id.*  The elements of tortious interference with a business relationship or expectancy are:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted."

*Id.*  Both claims require that a plaintiff prove either "the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." *Feldman v Green,* 138 Mich. App. 360, 369 (1984).  "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v R.L. Polk Co.,* 193 Mich. App. 1, 12-13 (1992).  "To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Mino v Clio School District,* 255 Mich. App. 60, 78 (2003).  "Where the defendant's actions were motivated by legitimate business reasons, its actions would

---

[4]*Health Call* was released for publication on November 29, 2005 and, per Westlaw, publication page numbers are not yet available.

not constitute improper motive or interference." *Id.*

Plaintiff has not met its burden for either claim. With regard to the claim of tortious interference with contractual relations, Plaintiff does not even identify the clients with whom either Tembec or Gurican allegedly interfered. Further, Plaintiff presents no evidence: 1) of a contract with a particular person or company; 2) a breach of any of Plaintiff's contracts; or 3) that a breach was instigated by either Defendant.

With regard to the claim of tortious interference with business expectancies against Tembec, Plaintiff's presumed business expectancy was the customers for which it is no longer the exclusive distributor. However, as already stated, Plaintiff has not presented any evidence establishing a breach of contract by Tembec in its termination of Plaintiff's exclusive distributorship contract. Consequently, Plaintiff also failed to show that Tembec's actions were either wrongful per se or malicious and unjustified.

Plaintiff's claim against Gurican is based on his alleged solicitation of Erickson's customers. However, Plaintiff failed to present any evidence to establish the third and fourth elements of a *prima facie* case--that his alleged interference with customers actually induced or caused a breach or termination of Plaintiff's business relationships or expectancies, and that Plaintiff suffered damages as a result. Plaintiff's conclusory assertions alone are insufficient. For these reasons, Defendants' respective motions on Count X is granted.

      ii.      **Unjust Enrichment**

"The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v SMH (US), Inc.*, 202 Mich. App. 366,

375 (1993). Under the appropriate circumstances, Michigan law allows courts to imply a contract in order to prevent unjust enrichment. *Id.* "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id.*

Plaintiff claims that Defendant Tembec was unjustly enriched by Plaintiff's efforts as an exclusive distributor in developing Tembec's business. Under Michigan law, however, Plaintiff cannot bring this claim against Tembec because Plaintiff and Tembec had an enforceable contract through which Plaintiff was compensated for its distribution of Tembec products. The doctrine of unjust enrichment does not apply against Tembec.

Plaintiff claims that Defendant Gurican received benefits to which he was not entitled by contacting Plaintiff's customers after he went to work for All Tile. There is no evidence to support this claim. Plaintiff relies upon Gurican's testimony in which he admitted that he called one hundred of Plaintiff's customers after he went to work for All Tile. However, Plaintiff mischaracterizes the admission. Gurican works for All Tile as a product manager. *See* Gurican Dep. at Pl. Exh. 6, p. 102. One of his responsibilities as such is to travel with sales representatives to make sure that *existing* All Tile customers are comfortable and familiar with the products, and that the sales staff is properly trained. *Id.* At the page cited by Plaintiff, Gurican acknowledges calling on former Erickson's customers in Chicago during his travels with All Tile sales representatives:

> Q   When you began working with All Tile did you call any customers that were former customers of Erickson [sic]?
>
> A   Did I call on them how?
>
> Q   You say you go out with sales reps and things?
>
> A   Sure[.]
>
> Q   What companies are those?

> A Numerous[.] Im [sic] sure many of the companies that Ericksons [sic] calls upon. All Tile -- if you want a list. [sic] I'll have to type it out[.] It will be a thousand different customers[.] We all call on the same people is the point Im [sic] trying to make.
>
> Q I understand. . . . But how many customers in the Chicago market did you contact that were Ericksons [sic] former customers?
>
> A A hundred.

*Id* at p. 104. There is nothing in this testimony which indicates, as Plaintiff suggests, that Gurican solicited customers from Plaintiff. When considered in context with his stated job duties and the question asked by the examiner, it appears that the former Erickson's customers Gurican called on already had accounts with All Tile. Therefore, Plaintiff has not presented any evidence which raises a question of fact regarding whether Gurican's contact with Plaintiff's former customers amounted to unjust enrichment.

Both Defendants' motions on Count V is granted.

### iii. Unfair Competition

As Plaintiff acknowledges, Michigan recognizes a common law claim of unfair competition when a person or company simulates or imitates the product of another in order to deceive the public regarding its origin:

> Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or

merchandise.

*Peninsular Stove Co. v Augst*, 288 Mich. 465, 470 (1939)(*quoting Schwannecke v Genesee Coal & Ice Co.*, 262 Mich. 624 (1933)).  No such allegations are made in this case against either Tembec or Gurican.  Instead, Plaintiff alleges that Gurican solicited its customers, and that Tembec wrongfully appropriated Plaintiff's business reputation by giving business Plaintiff developed in certain markets to competitor All Tile. Notwithstanding the lack of evidence to support Plaintiff's allegations, Plaintiff does not cite any authority indicating that the allegations state a cognizable unfair competition claim.  Defendants' motion on Count IV is granted.

### V.    CONCLUSION

For the reasons stated, Defendants Tembec, Inc. and Tembec USA, LLC's Motion for Summary Judgment and Defendant Kevin Gurican's Motion for Summary Judgment are **GRANTED** in their entirety.

**IT IS SO ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 18, 2006

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 18, 2006.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |